**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE**

**MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | |
|---|---|
| CHRISTY CASEY, as the personal representative of the estate of her son, Travis Sessions, and L.S., a minor, by and through her grandmother, Christy Casey,<br><br>    Plaintiffs,<br><br>    v.<br><br>JAMES GARTLAND, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO.<br>)    2:18cv890-MHT<br>)        (WO)<br>)<br>)<br>) |

**OPINION**

As the mother and the personal representative of the estate of decedent Travis Sessions, plaintiff Christy Casey brought this lawsuit naming as defendants current and former Alabama correctional officers James Gartland, Christopher Webster, and Cassandra Miller. Casey asserts a single federal claim pursuant to 42 U.S.C. § 1983: that the defendants' deliberate indifference to her son's serious medical needs caused

his death in the custody of the Alabama Department of Corrections (ADOC), in violation of the United States Constitution.  Subject-matter jurisdiction is proper under 28 U.S.C. § 1331 (federal question).

Because the decedent Sessions's seven-year-old daughter, L.S., is a minor and sole heir to his estate, the parties have asked that the court approve their proposed settlement.  Also, L.S. was added as a plaintiff for purposes of the settlement.  At a pro ami hearing on July 10, 2020, the court heard from the parties' counsel, L.S.'s grandmother (plaintiff Casey), L.S.'s mother, and L.S.'s court-appointed guardian ad litem.  For the reasons described herein, the court will approve the settlement.

## I.  BACKGROUND

This case arises out of Sessions's death while he was incarcerated at Red Eagle Community Work Center, a minimum-security ADOC facility.  Plaintiffs Casey and

L.S. allege that the three correctional officer defendants refused Sessions's repeated requests for medical attention over several days, despite his reports of severe and worsening symptoms, including coughing up blood, weakness, and shortness of breath. The plaintiffs allege that Sessions died as a result of the defendants' refusal to provide timely medical care. They seek compensatory and punitive damages, attorneys' fees and costs, and any other appropriate relief.

The parties have proposed to the court a settlement of $ 600,000 to resolve all claims and damages arising out of, or relating to, Sessions's death. The funds for the settlement are to be paid by the Alabama General Liability Trust Fund. Out of this sum, $ 2,720.74 is to be reimbursed to plaintiffs' counsel for expenses incurred. As to the remaining amount, because plaintiffs' fee agreement provides for a 50 % contingency fee, Sessions's daughter L.S. would receive

$ 298,616.64. The settlement also provides for the dismissal of this lawsuit with prejudice.

To represent L.S.'s interest, the court appointed a guardian ad litem, whose fees and expenses, the parties agree, are not to come out of L.S.'s settlement proceeds but rather are to be paid by the Trust Fund.

## II. LEGAL STANDARD

It is unclear whether federal or state law governs whether a federal court should approve the settlement of a *federal* claim brought by, or otherwise implicating the interest of, a minor;[1] it is also unclear what the binding federal law, if it does govern, is.[2]

---

1. If the claim were solely a state one, then state law would clearly govern. *See K.J. v. CTW Transportation Servs., Inc.*, No. 2:18-cv-19, 2018 WL 3656305, at *1 (M.D. Ala. Aug. 2, 2018) (Thompson, J.) ("Alabama law ... is a rule of substantive law, which must be applied by federal courts sitting in diversity.") (*citing Burke v. Smith*, 252 F.3d 1260, 1266 (11th Cir. 2001)).

2. Federal Rule of Civil Procedure 17(c)(2) requires the appointment of a guardian ad litem for a

4

Nevertheless, this court believes it can safely and confidently apply Alabama law without resolving these issues. First, because Alabama law is so reasonable and straightforward, the court believes that, if federal law were to govern, it would be parallel to, and would not substantively and procedurally differ in any material way from Alabama law, at least as to the issues presented in this case. Alabama law, therefore, is instructive of what federal law should be to this extent. Second, there is the practical advantage that Alabama law, unlike federal law, is fairly settled and easily discernable.

"Alabama law requires that a court hold a fairness hearing before a minor plaintiff's case may be settled." *Adams v. Criswell*, No. 1:13-cv-458, 2014 WL 813142, at *1 (M.D. Ala. Mar. 3, 2014) (Thompson, J.) (*citing Large v. Hayes By and Through Nesbitt*, 534

---

minor plaintiff in a case such as this, but does not prescribe any framework for evaluating a settlement of the minor's claim.

5

So.2d 1101, 1105 (Ala. 1988)).  This hearing must involve "an extensive examination of the facts, to determine whether the settlement is in the best interest of the minor."  *Large*, 534 So.2d at 1105 (internal citation omitted); *see also* William E. Shreve, Jr., *Settling the Claims of a Minor*, 72 Ala. Law. 308 (2011).  Because a minor ordinarily cannot be bound by a settlement agreement, *see Hines v. Seibels*, 86 So. 43, 44 (Ala. 1920); Shreve, *Settling the Claims of a Minor*, *supra*, at 309, a fairness hearing and approval of the settlement are required in order for the settlement to be "valid and binding" and to "bar[ ] a subsequent action [by the minor] to recover for the same injuries."  *Id*. at 310 (internal quotation and citation omitted).

## III. APPROVAL OF SETTLEMENT

Having reviewed the pleadings in this case and heard a detailed explanation of the settlement at the

pro ami hearing, the court finds that the terms and provisions of the proposed settlement are in the best interest of the minor plaintiff L.S. and are fair, just, and reasonable under the circumstances involved in this case.  The court reaches this conclusion for several reasons.

First, the decision to settle was logical. ADOC conducted its own extensive investigation into Sessions's death, which the guardian ad litem reviewed as part of her evaluation of this settlement.  The guardian also spoke with counsel for both parties about the strengths and weaknesses of the claim and the possible defenses.  At the pro ami hearing, the guardian credibly testified that there are substantial factual questions surrounding liability and appropriate damages, which make the likelihood of success at trial uncertain. Perhaps equally important is the 'zero-sum' nature of the funds available in this case:  Any award for the plaintiffs *as well as* litigation expenses and

7

attorney's fees for both the defense and the plaintiffs' counsel (should they be entitled to fees under the law as representing prevailing parties) are to be paid by the Alabama General Liability Trust Fund, which provides for only $ 1 million in coverage for this incident.  The labor-intensive litigation of the various challenging and complex legal and factual issues in this case, including qualified immunity and causation, would substantially diminish the amount of funds available to satisfy any jury award, if one were awarded.  Also, counsel for the defendants represent that none of the defendants have significant personal assets that could supplement the Trust Fund coverage in the event of a greater jury award.

Second, in light of this $ 1 million cap and 'zero-sum' situation, the court also finds the settlement amount of $ 600,000 and net proceeds for L.S. of $ 298,616.64 to be reasonable.  As described, proceeding to trial would significantly diminish the

8

insurance coverage, likely leaving the plaintiffs unable to collect a jury award greater than, or even equal to, the settlement amount. In addition, the guardian ad litem stated that, in death-related cases such as this one, she hopes to see a "six-figure" amount for the minor plaintiff, which L.S. will receive.

Third, although a 50 % contingency fee is on the high end, it is reasonable in this case. *See Sweeney v. Athens Reg'l Med. Ctr.,* 917 F.2d 1560, 1569 (11th Cir. 1990) (approving 50 % contingency fee over the objection of at least one attorney-fee expert given the difficulty of a case); *Large,* 534 So.2d at 1106 (noting that a 50 % contingency fee has been upheld as a matter of law); *McCall v. Reed*, 157 F. Supp. 3d 1192, 1198 (M.D. Ala. 2015) (Thompson, J.) (approving 50 % contingency fee in settlement of constitutional tort claim). To decide whether attorney's fees are reasonable, the court must determine the "lodestar"

9

figure, "that is, the product of the number of hours reasonably expended to prosecute the lawsuit and the reasonable hourly rate for work performed by similarly situated attorneys in the community." *Simpleville Music v. Mizell,* 511 F. Supp. 2d 1158, 1161 (M.D. Ala. 2007) (Thompson, J.) (citing *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988)). The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Id.* at 1162 (quoting *Norman,* 836 F.2d at 1303). In determining the lodestar, the court applies the 12-factor test set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (abrogated on other grounds by *Blanchard v. Bergeron,* 489 U.S. 87 (1989)),[3] and then proceeds to analyze "whether any portion of this fee

---

3. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

10

should be adjusted upwards or downwards." *Simpleville Music,* 511 F. Supp. 2d at 1161 (citing *Johnson,* 488 F.2d at 717-19).[4]

Plaintiffs' counsel calculated the lodestar here to be approximately $ 56,000, based on one attorney's work of over 80 hours at a rate of $ 500 per hour and another attorney's work of over 40 hours at a rate of $ 400 per hour. *See* Reply Brief (doc. no. 59) at 6. This amount is substantially less than the nearly $ 300,000 plaintiffs' counsel stands to receive under the settlement. Nonetheless, as this court has

---

4. These 12 *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson,* 488 F.2d at 717-19.

previously found, constitutional torts cases under 42 U.S.C. § 1983 are "high risk" undertakings, as they require the investment of many hours into litigation and are very difficult to prove. *McCall*, 157 F. Supp. 3d at 1198. "Without higher contingency fees, lawyers may not even take meritorious cases." *Id.* Thus, the court finds the contingency-fee arrangement to be reasonable in this case.

Fourth, the court finds that, in light of the available options, the plan to manage the settlement proceeds on behalf of L.S. is in her best interest. The guardian ad litem has described the purchase of an annuity as the preferred method of investment of the settlement proceeds, for it would earn the most interest. However, the State of Alabama, the Trust Fund, and the defendants have taken the position that it is not possible to purchase an annuity for L.S. due to various legal and logistical hurdles. And plaintiffs' counsel has responded that he had "hoped an

12

annuity would be achievable but understands defendants and the State of Alabama remain opposed," that he "understands any order by the Court regarding an annuity will be the subject of an appeal," and that, "[t]o the extent that defendants are unwilling to cooperate with an annuity, [he] requests that the Court approve the settlement without any requirement of an annuity." Plaintiffs' Response to Order (doc. no. 69). He also states that he "has already taken steps toward establishing a trust that will provide many of the same benefits as an annuity, including payments over time after the age of majority," and that, "[w]hile in dollar terms, a trust cannot match an annuity, the trust will provide a vehicle for preserving and growing the principal and avoid having the minor receive all of the funds in a lump sum upon reaching the age of majority." *Id.* The court finds that, while it is unfortunate that an annuity cannot be purchased under the terms the parties have reached, the proposed

settlement is still in the best interest of L.S. In short, the court is unwilling to upset the settlement because of this concern and put L.S. to the substantial risk of loss that would attend further litigation.

Finally, the guardian ad litem, L.S.'s grandmother, L.S.'s mother, and the defendants agree that the settlement amount is in L.S.'s best interest.

In sum, the court finds the settlement is fair, just, and reasonable, and in the best interest of the minor plaintiff L.S. The court will therefore approve the settlement.

An appropriate judgment will be entered.

DONE, this the 4th day of August, 2020.

                          /s/ Myron H. Thompson
                          **UNITED STATES DISTRICT JUDGE**